**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.: _____

ASSOCIATED INDUSTRIES INSURANCE
COMPANY, INC., a Florida corporation,

     Plaintiff,

v.

SLATTERY, SOBEL & DECAMP, LLP, a
California limited liability partnership; DEL
MAR LAW GROUP, LLP, a California
limited liability partnership; CARLSBAD
LAW GROUP, LLP, a California limited
liability partnership; and JL "Sean"
SLATTERY, an individual and resident of
California,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

    Plaintiff, Associated Industries Insurance Company, Inc. ("AIIC"), by and through

undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil

Procedure, hereby files this Complaint for Declaratory Judgment against Defendants, Slattery,

Sobel & Decamp, LLP; Del Mar Law Group, LLP; Carlsbad Law Group, LLP; and JL "Sean"

Slattery (collectively, the "Firm"), and states as follows:

## INTRODUCTION

    1.    In this action, AIIC seeks a declaration that it has no further duty to defend or

indemnify the Firm in three related civil actions. Those actions are: (1) *Wyndham Vacation*

*Ownership, Inc. v. Slattery, Sobel & Decamp, LLP,* Case No. 6:19-cv-01908-WWB-EKJ, pending

in the U.S. District Court, Middle District of Florida (the "Wyndham Action"); (2) *Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC,* Case No. 2:20-cv-05486-DSF-ADS, pending in the U.S. District Court, Central District of California (the "Diamond Action"); and (3) *Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.,* Case No. 1:20-cv-24681-RNS, pending in the U.S. District Court, Southern District of Florida (the "Bluegreen Action"). The Wyndham Action, the Diamond Action, and the Bluegreen Action will be collectively referred to herein as the "Timeshare Litigation."

2.     As discussed in greater detail below, the Timeshare Litigation arose out of the same alleged wrongful acts and/or interrelated wrongful acts committed by the Firm. In each of the three cases, the Firm is alleged to have unlawfully interfered in the contractual relationships between timeshare developers and timeshare owners, allegedly causing the timeshare owners to breach their timeshare contracts to the detriment of the timeshare developers, resulting in the timeshare developers seeking the entry of a judgment against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees.

3.     AIIC issued a Lawyers Professional Liability Insurance Policy to the Firm for the policy period of April 7, 2019 to April 7, 2020, with limits of $1,000,000 per claim and in the aggregate (the "Policy"). AIIC thereafter issued a Lawyers Professional Liability Insurance Policy to the Firm for the policy period of April 7, 2020 to April 7, 2021, with limits of $1,000,000 per claim and in the aggregate (the "Renewal Policy"). The Policy and the Renewal Policy provide an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements.

4.     AIIC has defended the Firm in the Timeshare Litigation under the Policy. On or about December 1, 2021, the limits of liability under the Policy were exhausted through the

payment of claim expenses in the Timeshare Litigation. As a result, AIIC seeks a declaration that it has no further duty to defend or indemnify the Firm in the Timeshare Litigation.

5.      There is a justiciable controversy relating to the rights and duties of the parties in this matter. The Firm contends that AIIC is required to defend and indemnify the Firm under the Policy and/or the Renewal Policy in the Timeshare Litigation while AIIC contends, for the reasons set forth below, that AIIC has no further duty to defend or indemnify the Firm in the Timeshare Litigation.

## THE PARTIES

6.      The Plaintiff, AIIC, is a Florida corporation with its principal place of business in Florida and, therefore, AIIC is a citizen of Florida.

7.      The Defendant, Carlsbad Law Group, LLP, is the successor entity to a merger between the Defendants, Slattery, Sobel & Decamp, LLP and Del Mar Law Group, LLP.

8.      The Defendant, Carlsbad Law Group, LLP, has three partners who are each a citizen of California and, therefore, Carlsbad Law Group, LLP, is a citizen of California.

9.      The Defendant, JL "Sean" Slattery, is an individual domiciled in and a citizen of California. Mr. Slattery is one of the partners in Carlsbad Law Group, LLP.

10.      The Non-Party, David P. Hall, is an individual domiciled in and a citizen of California. Mr. Hall is one of the partners in Carlsbad Law Group, LLP.

11.      The Non-Party, Cynthia Marks, is an individual domiciled in and a citizen of California. Ms. Marks is one of the partners in Carlsbad Law Group, LLP.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1) because there is complete diversity of

citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over the Defendants because the Defendants operate websites that are freely accessible from Florida, which involve the repeated transmission of files over the Internet in and out of Florida, and the Defendants conduct substantial business in Florida, including the matters that gave rise to the Timeshare Litigation.

14.     Venue is proper in the United States District Court of the Middle District of Florida under 28 U.S.C. § 1391 because events giving rise to this claim occurred within this District.

15.     Pursuant to Local Rule 1.02(c), this matter is properly instituted in the Orlando Division of the Middle District of Florida as Orange County is the county of origin of this case.

## THE TIMESHARE LITIGATION

### A.  The Wyndham Action

16.     On January 21, 2020, Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC (collectively, "Wyndham Resorts") filed an Amended Complaint against the Firm in the U.S. District Court, Middle District of Florida. A copy of the Amended Complaint (without exhibits) is attached as Exhibit A.

17.     Wyndham Resorts asserts four causes of action against the Firm in the Amended Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act; and (4) Civil Conspiracy.

18.     In support of the causes of action, Wyndham Resorts alleges, among other things, that ownership in a timeshare is a contractual relationship with timeshare contracts delineating the benefits and obligations of timeshare ownership. (Am. Compl. at ¶ 85).

19.     Wyndham Resorts alleges that timeshare exit companies "prey upon unsuspecting timeshare owners . . . inducing them into breaching their valid and binding Timeshare Contracts," which causes harm to the timeshare developers and the timeshare owners. (Am. Compl. at ¶ 86). According to the Amended Complaint, the Firm purportedly provides "a false air of legitimacy to the overall scheme by allowing the marketing group to advertise that they work with attorneys, making the operation appear legitimate." (Am. Compl. at ¶ 91).

20.     Wyndham Resorts alleges that the Firm routinely sends demand letters to Wyndham Resorts on behalf of the Firm's timeshare owner clients, stating "nonsensical and baseless allegations of violations of California law when none of [the timeshare contracts] at issue have any connection to the State of California, and then do little to nothing to follow-up on those demand letters." (Am. Compl. at ¶ 104). According to the Amended Complaint, the Firm "show[s] all the signs of being a lawyer group affiliated with a marketing group as part of a larger timeshare exit scam." (Am. Compl. at ¶ 106).

21.     Wyndham Resorts alleges that the Firm "explicitly or implicitly encourages the false advertising [aimed at timeshare owners] because they knowingly accept legal representation of the consumers deceived by the false and/or misleading advertising." (Am. Compl. at ¶ 181). Wyndham Resorts further alleges that the Firm "intentionally procured the breach of Wyndham's contractual relationships by soliciting [the timeshare owners] and persuading them to hire [the Firm] to help 'exit' (in reality, breach) their Timeshare Contracts." (Am. Compl. at ¶ 181).

22.     Based on the foregoing, Wyndham Resorts contends that the Firm engaged in deceptive and unfair practices, including but not limited to (1) luring the timeshare owners into procuring the Firm's illusory services with false advertising, and (2) using misrepresentations to convince the timeshare owners to pay a substantial amount to "exit" their timeshare contract when a lawful termination is only available by Wyndham Resorts. (Am. Compl. at ¶ 228).

23.     Wyndham Resorts seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. (Am. Compl. at ¶ 251).

**B.  The Diamond Action**

24.     On January 15, 2021, Diamond Resorts U.S. Collection Development, LLC, and Diamond Resorts Hawaii Collection Development, LLC (collectively, "Diamond Resorts") filed a Fourth Amended Complaint against the Firm in the U.S. District Court, Central District of California. A copy of the Fourth Amended Complaint (without exhibits) is attached as Exhibit B.

25.     Diamond Resorts asserts eight causes of action against the Firm in the Fourth Amended Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Intentional Interference with Prospective Economic Relations; (4) Aiding and Abetting Tortious Interference with Contractual Relations; (5) Aiding and Abetting Intentional Interference with Prospective Economic Relations; (6) Violation of California's Unfair Competition Code; (7) Aiding and Abetting Violations of California's Business & Professions Code; and (8) Civil Conspiracy.

26.     In support of the causes of action, Diamond Resorts alleges, among other things, that the Firm under the guise of providing timeshare exit services, encourages or instructs its clients to stop making payments under their timeshare contracts. (4th Am. Compl. at ¶ 3). In doing so,

Diamond Resorts contends that this "does not result in a successful 'cancellation' [of the timeshare contract], but rather breach of contract, defaulted payments, damaged credit, termination of the timeshare interest, and tax liabilities." (4th Am. Compl. at ¶ 3).

27.     Diamond Resorts alleges that the breach of the timeshare contract is "not an incidental or unintended outcome of [the Firm's] 'exit' services – it is the primary strategy of the service." (4th Am. Compl. at ¶ 4). Diamond Resorts contends that the first step in the timeshare exit scheme is that the timeshare exit companies "engage in widespread false, misleading, and disparaging advertising, via television, the internet, and other means" with the intent of enticing a timeshare owner to contact the timeshare exit company. (4th Am. Compl. at ¶ 5).

28.     Diamond Resorts alleges that the timeshare exit companies could not engage in the false, misleading, and disparaging advertising without the assistance of the Firm, which provides the legal services which are the focus of marketing the timeshare exit services. (4th Am. Compl. at ¶ 9). Diamond Resorts further alleges that the Firm "participate[s] in the advertising campaign by continuing to provide 'exit' services with knowledge that the [timeshare exit companies]'s advertisements are false, misleading and disparaging." (4th Am. Compl. at ¶ 10).

29.     Diamond Resorts alleges that the Firm routinely sends demand letters to Diamond Resorts on behalf of the Firm's timeshare owner clients, advising that their clients would like to cancel their timeshare contracts." (4th Am. Compl. at ¶ 20). These letters are often "boilerplate, and sometimes only one paragraph, requesting the wholesale cancellation of dozens of Timeshare Contracts without any specifics." (4th Am. Compl. at ¶ 20). Upon issuing the letters, the Firm allegedly "rarely" takes any further step on behalf of its clients. (4th Am. Compl. at ¶ 23).

30.     Diamond Resorts alleges that the Firm "did not and do not have any justification or privilege in procuring the breach of the Timeshare Contracts," and the Firm's "interference with

[Diamond Resorts]'s business is willful, malicious, [and] detrimental to" Diamond Resorts, (4th Am. Compl. at ¶ 375), causing the timeshare owners to terminate and/or default on their contractual obligations under the timeshare contracts. (4th Am. Compl. at ¶ 376).

31.     Based on the foregoing, Diamond Resorts contends that the Firm engaged in deceptive and unfair practices, including but not limited to (1) soliciting the timeshare owners through false, misleading, and disparaging advertisements; (2) inducing the timeshare owners to pay large upfront fees instead of making their payments under the timeshare contracts; and (3) encouraging the timeshare owners to stop making their payments under the timeshare contracts. (4th Am. Compl. at ¶ 418).

32.     Diamond Resorts seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. (4th Am. Compl. at ¶¶ 368, 380, 398, 430, 451, 459, 467, and 475).

**C.  The Bluegreen Action**

33.     On November 13, 2020, Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation (collectively, "Bluegreen Vacations") filed a Complaint against the Firm in the U.S. District Court, Southern District of Florida. A copy of the Complaint (without exhibits) is attached as Exhibit C.

34.     Bluegreen Vacations asserts four causes of action against the Firm in the Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act; and (4) Civil Conspiracy.

35.     In support of the causes of action, Bluegreen Vacations alleges, among other things, that the timeshare exit companies assure the timeshare owners that the timeshare exit process will

result in a legal and permanent release of any obligations associated with the timeshare interest, (Compl. at ¶ 53), and, in doing so, the timeshare exit companies fail to disclose that the "cancellation" or "exit" from the timeshare contract results in an unlawful breach of the timeshare contract due to non-payment, leading to the termination of the timeshare interest. (Compl. at ¶ 54).

36.     Bluegreen Vacations alleges that the timeshare exit companies work with the Firm to circumvent prohibitions on direct solicitation and fee sharing which govern the practice of law, (Compl. at ¶ 31), which allows the Firm to accept a small flat fee in exchange for accepting the timeshare exit companies' customers as clients of the Firm. (Compl. at ¶ 29). The Firm then sends formulaic demand letters to Bluegreen Vacations on behalf of the Firm's timeshare owner clients, stating "non-legal bases upon which the [timeshare owners] could purportedly 'cancel' or 'terminate' their Timeshare Contracts." (Compl. at ¶ 272).

37.     Bluegreen Vacations alleges that the Firm "explicitly or implicitly encourage the false advertising [aimed at timeshare owners] because they knowingly accept legal representation of the consumers deceived by the false and/or misleading advertising." (Compl. at ¶ 200). Bluegreen Vacations alleges that the Firm "intentionally procured the breach of Bluegreen's contractual relationships by soliciting [the timeshare owners] and persuading them to hire [the Firm] to help 'exit' (in reality, breach) their Timeshare Contracts." (Am. Compl. at ¶ 227).

38.     Based on the foregoing, Bluegreen Vacations contends that the Firm engaged in deceptive and unfair practices, including but not limited to (1) luring the timeshare owners into procuring the Firm's illusory services with false advertising, (2) using misrepresentations to convince the timeshare owners to pay a substantial amount to "exit" their timeshare contract, and (3) falsely claiming that they can protect the timeshare owner's credit rating once the timeshare owner breaches his timeshare contract. (Compl. at ¶ 255).

39.     Bluegreen Vacations seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. (Am. Compl. at ¶ 251).

## THE POLICY

40.     AIIC issued the Policy to the Firm for the policy period of April 7, 2019 to April 7, 2020, with limits of $1,000,000 per claim and in the aggregate. The Policy's Additional Defense Limit of Liability Endorsement provides an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements. A copy of the Policy is attached as Exhibit D.

41.     The Policy contains an insuring agreement that provides, in relevant part, as follows:

### I.     *INSURING AGREEMENTS*

> A.  *The **Company** shall pay **Damages** and **Claim Expenses**, in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the **Insured** shall become legally obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.*
> . . .
> C.  ***Defense**. As part of and subject to the Policy's Limit of Liability, the **Company** shall have the right and duty to defend any **Claim** against the **Insured** to which this Policy applies, even if the allegations of the **Claim** are groundless, false, or fraudulent. However, the **Company's** duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of **Damages** and/or **Claim Expenses**.*

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 1 of 14).

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

42.     The Policy defines the term "*Claim*" as:

C.   *"**Claim**" means a written demand received by the **Insured** for monetary **Damages** which alleges a **Wrongful Act**, including:*

1.   *the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;*
2.   *institution of arbitration, mediation or other formal alternative dispute resolution proceeding;*
3.   *any written request to toll or waive a statute of limitations.*

*A **Claim** for injunctive relief alleging any **Wrongful Act** for which insurance would have been granted under this Policy if **Damages** had been sought, will be considered a **Claim** for the purposes of this Policy, but only the **Claim Expenses** arising therefrom will be covered by this Policy.*

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 2 of 14).

43.     The Policy defines the term "*Claim Expenses*" as:

D.   *"**Claim Expenses**" means:*

1.   *fees charged by any lawyer selected by mutual agreement between the **Company** and the **Insured**. However, if the **Company** and the **Insured** cannot agree on the selection of the lawyer after a good faith attempt, the **Company** shall select the lawyer; and*
2.   *all other fees, costs and expenses resulting from the investigation, and defense of a **Claim**, if incurred by the **Company** or by the **Insured** with the written consent of the **Company**.*

*"**Claim Expenses**" does not include salary charges of regular employees or officials of the **Company** or any supervisory counsel retained by the **Company**. The determination of the **Company** as to the reasonableness of the **Claim Expenses** shall be conclusive on the **Insured**.*

*See* Ex. D, Policy Endorsement-Form AES PL 101 01 14 (Page 1 of 1).

44.     The Policy defines the term "*Company*" as:

E.   *"**Company**" means the insurer named in the Declarations.*

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 2 of 14).

45.     The Policy defines the term "*Damages*" as:

G. **"Damages"** means any compensatory sum which the **Insured** becomes legally obligated to pay and includes:

1. monetary judgments or settlements;
2. punitive or exemplary damages to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to the **Insured**, the **Company**, this Policy or the **Claim**;
3. pre-judgment and post-judgment interest.

   **"Damages"** shall not include:

1. taxes, fines or penalties, sanctions, whether imposed by law or otherwise (except as provided above with respect to punitive or exemplary damages);
2. the return, reduction or restitution of fees, expenses or costs for **Professional Services** performed or to be performed by the **Insured**, or disgorgement by any **Insured**;
3. matters uninsurable under the law pursuant to which this Policy is construed;
4. the cost of correcting, re-performing or completing **Professional Services**;
5. future profits, future royalties, costs of licensing, or other costs of obtaining future use; or the costs to comply with orders granting injunctive relief or non-monetary relief, including specific performance, or any agreement to provide such relief.

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 3 of 14).

46.    The Policy defines the term "**Interrelated Wrongful Acts**" as:

L. **"Interrelated Wrongful Acts"** means **Wrongful Acts** that are causally or logically related and include all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the **Claim** or **Claims** alleging such acts involve the same or different claimants, **Insureds** or legal causes of action.

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 4 of 14).

47.    The Policy defines the term "**Professional Services**" as:

V. **"Professional Services"** means services:

1.  provided by any **Insured** to others as a lawyer, mediator, arbitrator or notary public but solely for services on behalf of the **Named Insured** or Predecessor Firm designated in the Declarations; or

2.  performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee, or in any other fiduciary capacity, but only if the act or omission in dispute is in the rendering of services ordinarily performed as a lawyer and then only to the extent that such services are on behalf of and insure to the benefit of the **Named Insured** or any Predecessor Firm designated in the Declarations.

See Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14).

48.    The Policy defines the term "***Wrongful Act***" as:

BB. **"Wrongful Act"** means any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render **Professional Services** by any **Insured** on behalf of the **Named Insured**, including but not limited to **Personal Injury**.

See Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14).

49.    The Policy contains certain exclusions to coverage that provide, in relevant part, as

follows:

### III.    EXCLUSIONS

This Policy shall not apply to any **Damages** or **Claim Expenses** incurred with respect to any **Claim:**

A.  based upon or arising out of any actual or alleged dishonest, criminal, intentional, malicious or fraudulent act, error or omission or any willful violation of any statute or regulation by an **Insured**, if a final adjudication adverse to such **Insured** establishes such a dishonest, criminal, intentional, malicious or fraudulent act, error or omission or willful violation.
. . .

F.  based upon or arising out of any gaining by the **Insured** of any profit, remuneration or advantage to which such **Insured** was not legally entitled, including the disgorgement of any such profit, remuneration or financial advantage by the **Insured**, if a final adjudication adverse to such **Insured** establishes such conduct;

See Ex. D, Policy Form AES PL 005 01 14 (Page 7 of 14).

50.     The Policy set forth the limits of liability, in relevant part, as follows:

*V.*      *LIMITS OF LIABILITY*

. . .

> E.   ***Multiple Insureds, Claims and Claimants****. The inclusion herein of more than one **Insured** shall not operate to increase the **Company's** Limit of Liability. **Claims** alleging, based upon, arising out of or attributable to the same **Wrongful Act(s)** or **Interrelated Wrongful Acts** shall be treated as a single **Claim** regardless of whether made against one or more than one **Insured**. All such **Claims**, whenever made, shall be considered first made during the **Policy Period**, the Automatic Extended Reporting Period, or Optional Extended Reporting Period, if purchased, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.*

*See* Ex. D, Policy Form AES PL 005 01 14 (Page 9 of 14).

51.     The Policy contains an additional defense limit of liability endorsement that states as follows:

### *ADDITIONAL DEFENSE LIMIT OF LIABILITY*

> *In consideration of the premium charged, it is hereby understood and agreed that Section V.A. and Section V.B. of this Policy shall be amended to read as follows:*

> ***Section V.**          **LIMITS OF LIABILITY***

> A.   *The liability of the **Company** for all **Claim Expenses** and **Damages** for each **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations for each **Claim**, except that the **Company** shall provide an additional $250,000 Limit of Liability for **Claim Expenses** for each **Claim**.*

> B.   *The total liability of the **Company** for all **Claim Expenses** and **Damages** for all **Claims** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the*

> *Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations as **Policy Period** Aggregate, except that the **Company** shall provide an additional $250,000 Limit of Liability for **Claim Expenses** as **Policy Period** Aggregate. The additional Limit of Liability for **Claim Expenses** provided in **Section V.A.** above, shall be part of, and not in addition to, the additional Limit of Liability for **Claim Expenses** as **Policy Period** Aggregate.*

*See* Ex. D, Policy Endorsement-Form AES PL 077 01 14 (Page 1 of 1).

### THE RENEWAL POLICY

52.     AIIC issued the Renewal Policy to the Firm for the policy period of April 7, 2020 to April 7, 2021, with limits of $1,000,000 per claim and in the aggregate. The Renewal Policy's Additional Defense Limit of Liability Endorsement provides an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements. A copy of the Renewal Policy is attached as Exhibit E. The terms of the Renewal Policy are identical to the terms of the Policy for the purposes of this action.

53.     AIIC is defending the Firm in the Timeshare Litigation under a reservation of rights, including the right to seek a declaratory judgment defining its obligations of defense and indemnity under the Policy and the Renewal Policy.

### COUNT I: CLAIM FOR DECLARATORY JUDGMENT
### (No Further Duty to Defend the Firm in the Timeshare Litigation)

54.     AIIC adopts and re-alleges the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55.     The Policy has been exhausted through the payment of claim expenses in the Timeshare Litigation.

56.     An actual, justiciable controversy has arisen over whether the Renewal Policy provides additional coverage for the claims against the Firm in the Timeshare Litigation.

57. AIIC contends that the Renewal Policy does not provide coverage for the claims alleged against the Firm in the Timeshare Litigation for the following reason:

(i) Section V, Subsection E, of the Policy states that multiple claims, "alleging, based upon, arising out of or attributable to the same Wrongful Act(s) or Interrelated Wrongful Acts shall be treated as a single Claim regardless of whether made against one or more than one Insured. All such Claims, whenever made, shall be considered first made during the Policy Period . . . in which the earliest Claim arising out of such Wrongful Act(s) or Interrelated Wrongful Acts was first made, and all such Claims shall be subject to the Limit of Liability and Retention set forth in such Policy." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 9 of 14)).

(ii) The Policy defines the term "Wrongful Acts," in relevant part, as "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14)).

(iii) The Policy defines the term "Interrelated Wrongful Acts" to include, in pertinent part, Wrongful Acts that are causally or logically related and include all Wrongful Acts that have as a common nexus any fact, circumstance, situation, or event regardless of whether the claim or claims involve the same claimants, insureds, or legal causes of action. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 4 of 14)).

(iv) The claims asserted in the Timeshare Litigation are based upon and arise out of the same alleged Wrongful Act(s) or Interrelated Wrongful Acts. In each of these matters, the Firm is sued by a timeshare developer. In each of these matters, the timeshare developer alleges that the Firm unlawfully interfered with its contractual relationships. In each of these matters, the timeshare developer demands that the Firm provide monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. Accordingly, the Wyndham Action, the Diamond Action, and

the Bluegreen Action constitute a single Claim under the Policy and the Claim is considered first made during the policy period of the Policy. This means that the Wyndham Action, the Diamond Action, and the Bluegreen Action are subject to and share the same limit of liability under the Policy and that there is no coverage for the Timeshare Litigation under the Renewal Policy.

58.     Accordingly, AIIC contends that the Renewal Policy does not afford a defense for the claims alleged against the Firm in the Timeshare Litigation.

59.     There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Renewal Policy and the rights and obligations of AIIC.

60.     The rights and obligations of AIIC under the Renewal Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Renewal Policy.

61.     AIIC and the Firm have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Associated Industries Insurance Company, Inc., respectfully requests that this Court enter judgment in its favor and: (a) declare that AIIC has no further obligation to defend the Firm under the Policy in the Timeshare Litigation; (b) declare that AIIC has no obligation to defend the Firm under the Renewal Policy in the Timeshare Litigation; and (c) grant such other relief as the Court deems just, proper and equitable.

## COUNT II: CLAIM FOR DECLARATORY JUDGMENT
### (No Duty to Indemnify the Firm in the Timeshare Litigation)

62.     AIIC adopts and re-alleges the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

63.     The Policy has been exhausted through the payment of claim expenses in the Timeshare Litigation.

64.    An actual, justiciable controversy has arisen over whether the Renewal Policy provides additional coverage for the claims against the Firm in the Timeshare Litigation.

65.    AIIC contends that the Renewal Policy does not provide coverage for the claims alleged against the Firm in the Timeshare Litigation for the following reason:

(i)    Section V, Subsection E, of the Policy states that multiple claims, "alleging, based upon, arising out of or attributable to the same Wrongful Act(s) or Interrelated Wrongful Acts shall be treated as a single Claim regardless of whether made against one or more than one Insured. All such Claims, whenever made, shall be considered first made during the Policy Period . . . in which the earliest Claim arising out of such Wrongful Act(s) or Interrelated Wrongful Acts was first made, and all such Claims shall be subject to the Limit of Liability and Retention set forth in such Policy." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 9 of 14)).

(ii)    The Policy defines the term "Wrongful Acts," in relevant part, as "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14)).

(iii)    The Policy defines the term "Interrelated Wrongful Acts" to include, in pertinent part, Wrongful Acts that are causally or logically related and include all Wrongful Acts that have as a common nexus any fact, circumstance, situation, or event regardless of whether the claim or claims involve the same claimants, insureds, or legal causes of action. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 4 of 14)).

(iv)    The claims asserted in the Timeshare Litigation are based upon and arise out of the same alleged Wrongful Act(s) or Interrelated Wrongful Acts. In each of these matters, the Firm is sued by a timeshare developer. In each of these matters, the timeshare developer alleges that the Firm unlawfully interfered with its contractual relationships. In each of these matters, the timeshare

developer demands that the Firm provide monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. Accordingly, the Wyndham Action, the Diamond Action, and the Bluegreen Action constitute a single Claim under the Policy and the Claim is considered first made during the policy period of the Policy. This means that the Wyndham Action, the Diamond Action, and the Bluegreen Action are subject to and share the same limit of liability under the Policy (which is now exhausted) and that there is no coverage for the Timeshare Litigation under the Renewal Policy.

66.     AIIC contends that the Renewal Policy does not provide coverage for the claims alleged against the Firm in the Timeshare Litigation for these additional reasons:

(i)     The cases comprising the Timeshare Litigation all arise out of the Firm's alleged interference in the contractual relationships between the timeshare developers and the timeshare owners, which are not "Professional Services" covered under the Renewal Policy. The Renewal Policy defines a "Wrongful Act," in relevant part, as any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14)). The Renewal Policy defines "Professional Services," in relevant part, as "the rendering of services ordinarily performed as a lawyer." (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 6 of 14)). Because the Timeshare Litigation was not filed by a client or former client of the Firm and the alleged intentional interference in the contractual relationships of a third party is not a service "ordinarily performed as a lawyer," the Timeshare Litigation does not qualify as an actual or alleged negligent act, error, or omission committed or attempted in the rendering of Professional Services under the Renewal Policy and, thus, does not qualify to trigger coverage under the Renewal Policy. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 1 of 14)).

(ii)     The Timeshare Litigation seeks damages that are not covered under the Renewal Policy. The Renewal Policy defines the term "Damages" to include monetary judgments, settlements, interest, and punitive damages to the extent that such damages are insurable under the law. The term "Damages" does *not* include: (1) taxes, fines, or sanctions; (2) the return of fees, expenses or costs for Professional Services or disgorgement by any Insured; (3) the cost of correcting, re-performing or completing Professional Services; or (4) the costs to comply with orders granting injunctive relief. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 3 of 14)). Because the Timeshare Litigation seeks relief in the form of corrective advertising, disgorgement of profits, and a permanent injunction, the relief sought in the Timeshare Litigation does not trigger coverage under the Renewal Policy. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 1 of 14)).

(iii)    There is no indemnity available to the Firm under the Renewal Policy based upon Exclusion A. In the Timeshare Litigation, the timeshare developers allege that the Firm intentionally interfered in their contractual relationships with the timeshare owners, causing the timeshare owners to breach their timeshare contracts to the detriment of the timeshare developers. Under Exclusion A, the Renewal Policy excludes coverage for any claim based upon or arising out of any actual or alleged dishonest or intentional act, error or omission or any willful violation of any statute, if a final adjudication adverse to the Firm establishes such a dishonest or intentional act, error or omission or willful violation of any statute. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 7 of 14)).

(iv)    There is also no indemnity available to the Firm under the Renewal Policy based upon Exclusion F. In the Timeshare Litigation, the timeshare developers seek damages that include the disgorgement of the profits obtained by the Firm in representing the timeshare owners. Under Exclusion F, the Renewal Policy excludes coverage for any claim based upon or arising out of any

gaining by the Insured of any profit to which the Insured was not legally entitled, including the disgorgement of any such profit, if a final adjudication adverse to the Firm establishes such conduct. (*See* Ex. D, Policy Form AES PL 005 01 14 (Page 7 of 14)).

67. Accordingly, AIIC contends that the Renewal Policy does not provide indemnity for the claims alleged against the Firm in the Timeshare Litigation.

68. There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Renewal Policy and the rights and obligations of AIIC.

69. The rights and obligations of AIIC under the Renewal Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Renewal Policy.

70. AIIC and the Firm have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Associated Industries Insurance Company, Inc., respectfully requests that this Court enter judgment in its favor and: (a) declare that AIIC has no obligation to continue to defend the Firm in the Timeshare Litigation; (b) declare that AIIC has no obligation to indemnify the Firm under the Policy in the Timeshare Litigation; (c) declare that AIIC has no obligation to indemnify the Firm under the Renewal Policy in the Timeshare Litigation; and (d) grant such other relief as the Court deems just, proper and equitable.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for Plaintiff*
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801


By: /s/ *James M. Kaplan*
    JAMES M. KAPLAN
    Florida Bar No.:921040
    james.kaplan@kaplanzeena.com
    elizabeth.salom@kaplanzeena.com
    DANIEL HIRSCHMAN
    Florida Bar No.: 44177
    daniel.hirschman@kaplanzeena.com
    maria.escobales@kaplanzeena.com