## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE NO.: 6:22-CV-80-PGB-GJK

ASSOCIATED INDUSTRIES
INSURANCE COMPANY, INC., a
Florida corporation,

     Plaintiff,

v.

SLATTERY, SOBEL & DECAMP,
LLP, a California limited liability
partnership; DEL MAR LAW
GROUP, LLP, a California limited
liability partnership; CARLSBAD
LAW GROUP, LLP, a California
limited liability partnership; and JL
"Sean" SLATTERY, an individual and
resident of California,

     Defendants.

_____/

## PLAINTIFF'S MOTION FOR JUDGMENT BY DEFAULT -
## DECLARATORY RELIEF REQUESTED

Plaintiff, Associated Industries Insurance Company ("AIIC"), by and through

its undersigned counsel, and pursuant to Rule 55(b) of the Federal Rules of Civil

Procedure, hereby files this Motion for Judgment by Default – Declaratory Relief

Requested against the Defendants, Slattery, Sobel & DeCamp, LLP; Del Mar Law

Group, LLP; Carlsbad Law Group, LLP; and JL "Sean" Slattery (collectively, the

"Firm"), and in support thereof states as follows:

**INTRODUCTION**

In this action, AIIC seeks a declaration that it has no further duty to defend or indemnify the Firm in three related civil actions. Those actions are: (1) *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP,* Case No. 6:19-cv-01908-WWB-EKJ, pending in the U.S. District Court, Middle District of Florida (the "Wyndham Action"); (2) *Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC,* Case No. 2:20-cv-05486-DSF-ADS, pending in the U.S. District Court, Central District of California (the "Diamond Action"); and (3) *Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.,* Case No. 1:20-cv-24681-RNS, pending in the U.S. District Court, Southern District of Florida (the "Bluegreen Action"). The Wyndham Action, the Diamond Action, and the Bluegreen Action will be collectively referred to herein as the "Timeshare Litigation."

As discussed in greater detail below, the Timeshare Litigation arose out of the same alleged wrongful acts and/or interrelated wrongful acts committed by the Firm. In each of the three cases, the Firm is alleged to have unlawfully interfered in the contractual relationships between timeshare developers and timeshare owners, allegedly causing the timeshare owners to breach their timeshare contracts to the detriment of the timeshare developers, resulting in the timeshare developers seeking the entry of a judgment against the Firm for monetary relief, injunctive relief, corrective advertising, interest, costs, and fees.

AIIC issued a Lawyers Professional Liability Insurance Policy to the Firm for the policy period of April 7, 2019 to April 7, 2020, with limits of $1,000,000 per claim

and in the aggregate (the "Policy"). AIIC thereafter issued a Lawyers Professional Liability Insurance Policy to the Firm for the policy period of April 7, 2020 to April 7, 2021, with limits of $1,000,000 per claim and in the aggregate (the "Renewal Policy"). The Policy and the Renewal Policy provide an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements.

AIIC has defended the Firm in the Timeshare Litigation under the Policy. On December 27, 2021, the limit of liability under the Policy (including the additional $250,000 limit of liability for claim expenses) was exhausted through the payment of claim expenses in the Timeshare Litigation. *See* Affidavit of Crystal Ivy, attached hereto as Exhibit A. As a result, AIIC filed this action on January 13, 2022, seeking a declaration that it has no further duty to defend or indemnify the Firm in the Timeshare Litigation. On May 4, 2022, a clerk's default was entered against the Defendants, Slattery, Sobel & DeCamp, LLP; Del Mar Law Group, LLP; Carlsbad Law Group, LLP; and JL "Sean" Slattery, for failing to file a response to the Complaint for Declaratory Judgment. AIIC timely filed this motion for default judgment in accordance with Middle District of Florida Local Rule 1.10(c).

## **FACTS DEEMED ADMITTED BY ENTRY OF CLERK'S DEFAULT**

### A.    **The Parties**

1.    The Plaintiff, AIIC, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida. *See* ECF Doc. No. 1, ¶6.

2.      The Defendant, Carlsbad Law Group, LLP, is the successor entity to a merger between the Defendants, Slattery, Sobel & Decamp, LLP and Del Mar Law Group, LLP. *See* ECF Doc. No. 1, ¶7.

3.      The Defendant, Carlsbad Law Group, LLP, has three partners who are each a citizen of California and, therefore, Carlsbad Law Group, LLP, is a citizen of California. *See* ECF Doc. No. 1, ¶8.

4.      The Defendant, JL "Sean" Slattery, is an individual domiciled in and a citizen of California. *See* ECF Doc. No. 1, ¶9. Mr. Slattery is one of the three partners in Carlsbad Law Group, LLP. *Id.*

5.      The Non-Party, David P. Hall, is an individual domiciled in and a citizen of California. *See* ECF Doc. No. 1, ¶10. Mr. Hall is one of the three partners in Carlsbad Law Group, LLP. *Id.*

6.      The Non-Party, Cynthia Marks, is an individual domiciled in and a citizen of California. *See* ECF Doc. No. 1, ¶11. Ms. Marks is one of the three partners in Carlsbad Law Group, LLP. *Id.*

**B.      Jurisdiction and Venue**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1) because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* ECF Doc. No. 1, ¶12.

8.     This Court has personal jurisdiction over the Defendants because the Defendants operate websites that are freely accessible from Florida, which involve the repeated transmission of files over the Internet in and out of Florida, and the Defendants conduct substantial business in Florida, including the matters that gave rise to the Timeshare Litigation. *See* ECF Doc. No. 1, ¶13.

9.     Venue is proper in the United States District Court of the Middle District of Florida under 28 U.S.C. § 1391 because events giving rise to this claim occurred within this District. *See* ECF Doc. No. 1, ¶14.

## C.     The Wyndham Action

10.     On January 21, 2020, Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., Wyndham Resort Development Corporation, Shell Vacations, LLC, SVC-Americana, LLC, and SVC-Hawaii, LLC (collectively, "Wyndham Resorts") filed an Amended Complaint against the Firm in the U.S. District Court, Middle District of Florida. *See* ECF Doc. No. 1, ¶16 & Ex. A

11.     Wyndham Resorts asserts four causes of action against the Firm in the Amended Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act; and (4) Civil Conspiracy. *See* ECF Doc. No. 1, ¶17 & Ex. A.

12.     Wyndham Resorts alleges that timeshare exit companies "prey upon unsuspecting timeshare owners . . . inducing them into breaching their valid and binding Timeshare Contracts," which causes harm to the timeshare developers and

the timeshare owners. *See* ECF Doc. No. 1, ¶19 & Ex. A. According to the Amended Complaint, the Firm provides "a false air of legitimacy to the overall scheme by allowing the marketing group to advertise that they work with attorneys, making the operation appear legitimate." *Id.*

13.   Wyndham Resorts alleges that the Firm routinely sends demand letters to Wyndham Resorts on behalf of the Firm's timeshare owner clients, stating "nonsensical and baseless allegations of violations of California law when none of [the timeshare contracts] at issue have any connection to the State of California, and then do little to nothing to follow-up on those demand letters." *See* ECF Doc. No. 1, ¶20 & Ex. A. According to the Amended Complaint, the Firm "show[s] all the signs of being a lawyer group affiliated with a marketing group as part of a larger timeshare exit scam." *Id.*

14.   Wyndham Resorts alleges that the Firm "explicitly or implicitly encourages the false advertising [aimed at timeshare owners] because they knowingly accept legal representation of the consumers deceived by the false and/or misleading advertising." *See* ECF Doc. No. 1, ¶21 & Ex. A. Wyndham Resorts further alleges that the Firm "intentionally procured the breach of Wyndham's contractual relationships by soliciting [the timeshare owners] and persuading them to hire [the Firm] to help 'exit' (in reality, breach) their Timeshare Contracts." *Id.*

15.   Based on the foregoing, Wyndham Resorts states that the Firm engages in deceptive and unfair practices, including: (1) luring the timeshare owners into procuring the Firm's illusory services with false advertising, and (2) using

misrepresentations to convince the timeshare owners to pay a substantial amount to "exit" their timeshare contract when a lawful termination is only available by Wyndham Resorts. *See* ECF Doc. No. 1, ¶22 & Ex. A.

16.     Wyndham Resorts seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. *See* ECF Doc. No. 1, ¶23 & Ex. A.

**D.     The Diamond Action**

17.     On January 15, 2021, Diamond Resorts U.S. Collection Development, LLC, and Diamond Resorts Hawaii Collection Development, LLC (collectively, "Diamond Resorts") filed a Fourth Amended Complaint against the Firm in the U.S. District Court, Central District of California. *See* ECF Doc. No. 1, ¶24 & Ex. B.

18.     Diamond Resorts asserts eight causes of action against the Firm in the Fourth Amended Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Intentional Interference with Prospective Economic Relations; (4) Aiding and Abetting Tortious Interference with Contractual Relations; (5) Aiding and Abetting Intentional Interference with Prospective Economic Relations; (6) Violation of California's Unfair Competition Code; (7) Aiding and Abetting Violations of California's Business & Professions Code; and (8) Civil Conspiracy. *See* ECF Doc. No. 1, ¶25 & Ex. B.

19.     Diamond Resorts contends that the Firm under the guise of providing timeshare exit services, encourages or instructs its clients to stop making payments under their timeshare contracts. *See* ECF Doc. No. 1, ¶26 & Ex. B. In doing so,

Diamond Resorts concludes that this "does not result in a successful 'cancellation' [of the timeshare contract], but rather breach of contract, defaulted payments, damaged credit, termination of the timeshare interest, and tax liabilities." *Id.*

20.     Diamond Resorts alleges that the breach of the timeshare contract is "not an incidental or unintended outcome of [the Firm's] 'exit' services – it is the primary strategy of the service." *See* ECF Doc. No. 1, ¶27 & Ex. B. Diamond Resorts contends that the first step in the timeshare exit scheme is that the timeshare exit companies "engage in widespread false, misleading, and disparaging advertising, via television, the internet, and other means" with the intent of enticing a timeshare owner to contact the timeshare exit company. *Id.*

21.     Diamond Resorts alleges that the timeshare exit companies could not engage in the false, misleading, and disparaging advertising without the assistance of the Firm, which provides the legal services which are the focus of marketing the timeshare exit services. *See* ECF Doc. No. 1, ¶28 & Ex. B. Diamond Resorts further alleges that the Firm "participate[s] in the advertising campaign by continuing to provide 'exit' services with knowledge that the [timeshare exit companies]'s advertisements are false, misleading and disparaging." *Id.*

22.     Diamond Resorts states that the Firm routinely sends demand letters to Diamond Resorts on behalf of the Firm's timeshare owner clients, advising that their clients would like to cancel their timeshare contracts." *See* ECF Doc. No. 1, ¶29 & Ex. B. These letters are often "boilerplate, and sometimes only one paragraph, requesting the wholesale cancellation of dozens of Timeshare Contracts without any specifics."

*Id.* Upon issuing the letters, the Firm allegedly "rarely" takes any further step on behalf of its clients. *Id.*

23.     According to the Fourth Amended Complaint, the Firm "did not and do not have any justification or privilege in procuring the breach of the Timeshare Contracts," and the Firm's "interference with [Diamond Resorts]'s business is willful, malicious, [and] detrimental to" Diamond Resorts, *see* ECF Doc. No. 1, ¶30 & Ex. B, causing the timeshare owners to terminate and/or default on their contractual obligations under the timeshare contracts. *Id.*

24.     Based on the foregoing, Diamond Resorts states that the Firm engages in deceptive and unfair practices, including: (1) soliciting the timeshare owners through false, misleading, and disparaging advertisements; (2) inducing the timeshare owners to pay large upfront fees instead of making their payments under the timeshare contracts; and (3) encouraging the timeshare owners to stop making their payments under the timeshare contracts. *See* ECF Doc. No. 1, ¶31 & Ex. B.

25.     Diamond Resorts seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. *See* ECF Doc. No. 1, ¶32 & Ex. B.

**E.     The Bluegreen Action**

26.     On November 13, 2020, Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation (collectively, "Bluegreen Vacations") filed a Complaint against the Firm in the U.S. District Court, Southern District of Florida. *See* ECF Doc. No. 1, ¶33 & Ex. C.

9

27.    Bluegreen Vacations asserts four causes of action against the Firm in the Complaint: (1) Contributory False Advertising in Violation of the Lanham Act; (2) Tortious Interference with Contractual Relations; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act; and (4) Civil Conspiracy. *See* ECF Doc. No. 1, ¶34 & Ex. C.

28.    In support of the causes of action, Bluegreen Vacations alleges that the timeshare exit companies assure the timeshare owners that the timeshare exit process will result in a legal and permanent release of any obligations associated with the timeshare interest, *see* ECF Doc. No. 1, ¶35 & Ex. C, and, in doing so, the timeshare exit companies fail to disclose that the "cancellation" or "exit" from the timeshare contract results in an unlawful breach of the timeshare contract due to non-payment, leading to the termination of the timeshare interest. *Id.*

29.    Bluegreen Vacations alleges that the timeshare exit companies work with the Firm to circumvent prohibitions on direct solicitation and fee sharing which govern the practice of law, *see* ECF Doc. No. 1, ¶36 & Ex. C, which allows the Firm to accept a small flat fee in exchange for accepting the timeshare exit companies' customers as clients of the Firm. *Id.* The Firm then sends formulaic demand letters to Bluegreen Vacations on behalf of the Firm's timeshare owner clients, stating "non-legal bases upon which the [timeshare owners] could purportedly 'cancel' or 'terminate' their Timeshare Contracts." *Id.*

30.    Bluegreen Vacations alleges that the Firm "explicitly or implicitly encourage the false advertising [aimed at timeshare owners] because they knowingly

accept legal representation of the consumers deceived by the false and/or misleading advertising." *See* ECF Doc. No. 1, ¶37 & Ex. C. Bluegreen Vacations further alleges that the Firm "intentionally procured the breach of Bluegreen's contractual relationships by soliciting [the timeshare owners] and persuading them to hire [the Firm] to help 'exit' (in reality, breach) their Timeshare Contracts." *Id.*

31.     Based on the foregoing, Bluegreen Vacations states that the Firm engages in deceptive and unfair practices, including: (1) luring the timeshare owners into procuring the Firm's illusory services with false advertising, (2) using misrepresentations to convince the timeshare owners to pay a substantial amount to "exit" their timeshare contract, and (3) falsely claiming that they can protect the timeshare owner's credit rating once the timeshare owner breaches his timeshare contract. *See* ECF Doc. No. 1, ¶38 & Ex. C.

32.     Bluegreen Vacations seeks the entry of a judgment in its favor and against the Firm for monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. *See* ECF Doc. No. 1, ¶39 & Ex. C.

**F.     The Policy**

33.     AIIC issued the Policy to the Firm for the policy period of April 7, 2019 to April 7, 2020, with limits of $1,000,000 per claim and in the aggregate. *See* ECF Doc. No. 1, ¶40 & Ex. D. The Policy's Additional Defense Limit of Liability Endorsement provides an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, or settlements. *Id.*

11

34.     The Policy's Insuring Agreement states, in relevant part, that AIIC "shall pay Damages and Claim Expenses . . . subject to the Policy's Limit of Liability, that the Insured shall become legally obligated to pay as a result of a Claim made against the Insured for a Wrongful Act . . . As part of and subject to the Policy's Limit of Liability, the Company shall have the right and duty to defend any Claim against the Insured to which this Policy applies, . . . However, the Company's duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of Damages and/or Claim Expenses." *See* ECF Doc. No. 1, ¶41 & Ex. D.

35.     The Policy defines the term "Claim" to mean, in relevant part, as a written demand received by the Insured for monetary Damages which alleges a Wrongful Act." *See* ECF Doc. No. 1, ¶42 & Ex. D. The Policy defines the term "Claim Expenses" to include the "fees charged by any lawyer selected by mutual agreement between the Company and the Insured," in addition to "all other fees, costs and expenses resulting from the investigation, and defense of a Claim, if incurred by the Company or by the Insured with the written consent of the Company." *See* ECF Doc. No. 1, ¶43 & Ex. D.

36.     The Policy defines the term "Company" as the insurer named in the Declarations. *See* ECF Doc. No. 1, ¶44 & Ex. D. The Policy defines the term "Damages" to mean, in relevant part, "any compensatory sum which the Insured becomes legally obligated to pay and includes: 1. monetary judgments or settlements; 2. punitive or exemplary damages . . . 3. pre-judgment and post-judgment interest." *See* ECF Doc. No. 1, ¶45 & Ex. D.

37.     The Policy defines the term "Wrongful Act" as "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services by any Insured on behalf of the Named Insured, including but not limited to Personal Injury." *See* ECF Doc. No. 1, ¶48 & Ex. D. The Policy defines the term "Interrelated Wrongful Acts" to mean "Wrongful Acts that are causally or logically related and include all Wrongful Acts that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the Claim or Claims alleging such acts involve the same or different claimants, Insureds or legal causes of action." *See* ECF Doc. No. 1, ¶46 & Ex. D.

38.     The Policy sets forth the limits of liability under the Policy, in relevant part, by stating:

> The inclusion herein of more than one Insured shall not operate to increase the Company's Limit of Liability. ***Claims alleging, based upon, arising out of or attributable to the same Wrongful Act(s) or Interrelated Wrongful Acts shall be treated as a single Claim*** regardless of whether made against one or more than one Insured. ***All such Claims, whenever made, shall be considered first made during the Policy Period . . . in which the earliest Claim arising out of such Wrongful Act(s) or Interrelated Wrongful Acts was first made, and all such Claims shall be subject to the Limit of Liability and Retention set forth in such Policy***.

*See* ECF Doc. No. 1, ¶50 & Ex. D (emphasis added).

39.     The Policy contains an additional defense limit of liability endorsement that states, in relevant part, that the "total liability of the Company for all Claim Expenses and Damages for all Claims first made against the Insured . . . shall not

exceed the amount stated in the Declarations as Policy Period Aggregate, except that the Company shall provide an additional $250,000 Limit of Liability for Claim Expenses as Policy Period aggregate." *See* ECF Doc. No. 1, ¶51 & Ex. D.

## G.    The Renewal Policy

40.    AIIC issued the Renewal Policy to the Firm for the policy period of April 7, 2020 to April 7, 2021, with limits of $1,000,000 per claim and in the aggregate. *See* ECF Doc. No. 1, ¶52 & Ex. E. The Renewal Policy's Additional Defense Limit of Liability Endorsement provides an additional $250,000 limit of liability for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements. *Id.* The terms of the Renewal Policy are identical to the terms of the Policy for the purposes of this action. *Id.*

## MEMORANDUM OF LAW

## A.    Legal Standard

"The entry of default constitutes an admission by Defendants of the well-pleaded allegations in the Complaint." *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1288 (S.D. Fla. 2016) (citing *Cancienne v. Drain Master of So. Fla. Inc.*, No. 08-61123-CIV, 2008 WL 5111264 at *1 (S.D. Fla. Dec. 3, 2008)). "When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). "In addition to the pleadings, the Court may also consider evidence

presented in support of the motion for default judgment, including testimony and affidavits." *Piper v. Metro Solutions, LLC*, No. 8:18-cv-3030-T-TPB-JSS, 2021 WL 1341460, at *2 (M.D. Fla. Feb. 16, 2021) (citing *Equal Emp't Opportunity Comm'n v. Titan Wast Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014)).

"[I]n order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief." *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 667 (M.D. Fla. 2015); *see Cohan v. Rist Properties, LLC*, No. 2:14-cv-439-FtM-38DNF, 2015 WL 224640, at *1 (M.D. Fla. Jan. 15, 2015) ("a court may enter a default judgment only if 'the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought"). "A 'sufficient basis' for default judgment is 'akin to that necessary to survive a motion to dismiss for failure to state a claim.'" *U.S. v. Dinh*, No. 8:20-cv-1794-KKM-AAS, 2021 WL 5867441, at *2 (M.D. Fla. Dec. 10, 2021) (quoting *Surtain*, 789 F.3d at 1245).

## B.    Choice of Law

The Court's subject matter jurisdiction in this action is based on diversity of citizenship under 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1). *See* ECF Doc. No. 1, ¶12. In cases based on diversity jurisdiction, the Court applies the substantive law of the forum state, including that state's choice of law rules. *See, e.g., Trumpet Vine Invs., N.V. v.*

*Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) ("a federal district court sitting in diversity must apply the choice of law rules of the forum state"). In determining which state's laws apply to contracts in this forum, Florida adheres to the doctrine of *lex loci contractus*. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

"The doctrine of *lex loci contractus* "directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done." *Nyberg v. Cryo-Cell Int'l, Inc.*, No. 8:11-cv-399-T-30AEP, 2013 WL 5408447, at *2 (M.D. Fla. Sept. 25, 2013) (quoting *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995)); *see also James River Ins. Co. v. Med Waste Management, LLC*, 46 F. Supp. 3d 1350, 1356, n.5 (S.D. Fla. 2014) ("the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage").

In this case, the contracts at issue – the Policy and the Renewal Policy – are governed by California law. The Policy and the Renewal Policy were both issued to the Firm at its address in Carlsbad, California, which was the last act necessary to complete the contracts. *See* ECF Doc. No. 1, ¶¶ 40, 52 & Exs. D and E; *see also National Trust Ins. Co. v. Graham Bros. Constr. Co., Inc.*, 916 F. Supp. 2d 1244, 1252 (M.D. Fla. 2013) (quoting *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1335 (S.D. Fla. 2001) ("[T]he place where the contract was executed is

16

generally considered to be the place where the policy is delivered"); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1322 (S.D. Fla. 2010) (stating same).

## C.    Policy Interpretation under California Law

Under California law, the "ordinary rules of contractual interpretation apply to insurance policies." *Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021). "When interpreting an insurance policy, courts must 'look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.'" *Id.* (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370 (Cal. 1995)). The language in the insurance policy "must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 18 (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265, 10 Cal. Rptr. 2d 538 (Cal. 1992)). "Courts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19 (citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807, 180 Cal. Rptr. 2d 538 (Cal. 1982)).

## D.    The Duty to Defend under California Law

Under California law, "[a]n insurance carrier owes a duty to defend its insured whenever a suit against the insured 'potentially seeks damages within the coverage of the policy.'" *Truck Ins. Exchange v. Superior Court*, 51 Cal. App. 4th 985, 993 (Cal. App. Ct. 1996) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275, 54 Cal. Rptr. 104 (Cal. 1966)). "The duty to defend continues until the insurer can conclusively eliminate,

through undisputed facts, any potential for coverage under the policy." *Truck Ins. Exchange*, 51 Cal. App. 4th at 993 (citing *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 301, 24 Cal. Rptr. 2d 467 (Cal. 1993)). "On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." *James River Ins. Co. v. Medolac Laboratories,* 290 F. Supp. 3d 956, 966 (C.D. Cal. 2018) (quoting *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 655, 31 Cal. Rptr. 3d 147 (Cal. 2005). The insurer's duty to defend can also end upon exhaustion of the policy's limit of liability. *Hartford Accident & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1781 (Cal. App. Ct. 1994); *Great American Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221, 238 (Cal. App. Ct. 2009).

### E.   Exhaustion of the Policy through the Payment of Claim Expenses

AIIC has defended the Firm in the Timeshare Litigation under a reservation of rights, including the right to seek a declaratory judgment defining its obligations of defense and indemnity under the Policy and the Renewal Policy. *See* ECF Doc. No. 1, ¶53. The Policy has a $1,000,000 per claim and in the aggregate limit of liability with an additional defense limit of liability of $250,000 for claim expenses in the event that the $1,000,000 limit of liability is exhausted through the payment of claim expenses, judgments, and/or settlements. *See* ECF Doc. No. 1, ¶40 & Ex. D.

On December 27, 2021, the limit of liability under the Policy (including the additional $250,000 limit of liability for claim expenses) was exhausted through the

payment of claim expenses in the Timeshare Litigation. *See* Declaration of Crystal Ivy attached hereto as Exhibit A. Based on the exhaustion of limits, AIIC is no longer obligated to defend or indemnify the Firm in the Timeshare Litigation under the Policy. Consequently, AIIC is entitled to the entry of a declaratory judgment on Counts I and II of the Complaint, declaring that: (i) AIIC has no further duty to defend the Firm under the Policy in the Timeshare Litigation, and (ii) AIIC has no duty to indemnify the Firm under the Policy in the Timeshare Litigation.

## F.   The Timeshare Litigation Constitutes a Single Claim under the Policy

Section V, Subsection E, of the Policy states that multiple claims, "alleging, based upon, arising out of or attributable to the same Wrongful Act(s) or Interrelated Wrongful Acts shall be treated as a single Claim regardless of whether made against one or more than one Insured. All such Claims, whenever made, shall be considered first made during the Policy Period . . . in which the earliest Claim arising out of such Wrongful Act(s) or Interrelated Wrongful Acts was first made, and all such Claims shall be subject to the Limit of Liability and Retention set forth in such Policy." *See* ECF Doc. No. 1, ¶¶ 57, 66 and Ex. D.[1]

---

[1] The term "arising out of" as set forth in the Policy is given "much broader significance than 'caused by' [and it is] ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'" *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 503-04 (Cal. App. Ct. 1993) (quoting *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985)); *see Jon Davler, Inc. v. Arch Ins. Co.*, 229 Cal. App. 4th 1025, 1035 (Cal. App. Ct. 2014) ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.")

The Policy defines the term "Wrongful Act" as "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services by any Insured on behalf of the Named Insured, including but not limited to Personal Injury." *See* ECF Doc. No. 1, ¶48 & Ex. D. The Policy defines the term "Interrelated Wrongful Acts" to mean "Wrongful Acts that are causally or logically related and include all Wrongful Acts that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the Claim or Claims alleging such acts involve the same or different claimants, Insureds or legal causes of action." *See* ECF Doc. No. 1, ¶46 & Ex. D.

Here, the claims asserted in the Wyndham Action, the Diamond Action, and the Bluegreen Action are based upon and arise out of the same alleged Wrongful Act(s) and/or Interrelated Wrongful Acts. In all three matters the Firm is sued by a timeshare developer that alleges claims for contributory false advertising in violation of the Lanham Act, tortious interference with contractual relationships, violation of state statutes regulating commercial practices, and civil conspiracy. Further, in all of three matters the timeshare developers demand that the Firm provide monetary relief, injunctive relief, corrective advertising, interest, court costs, and legal fees. In two of the matters – the Wyndham Action and the Bluegreen Action – the timeshare developers are represented by the same attorneys at the same law firm, who filed substantively identical complaints. *See* ECF Doc. No. 1, Exs. A and C.

Accordingly, the Wyndham Action, the Diamond Action, and the Bluegreen Action constitute a single Claim under the Policy, and the Claim is considered first made during the Policy Period of the Policy. This means that the Wyndham Action, the Diamond Action, and the Bluegreen Action are subject to and share the same limit of liability under the Policy and that there is no coverage for the Timeshare Litigation under the Renewal Policy. *See* ECF Doc. No. 1, ¶¶ 57, 65 and Ex. D. Thus, AIIC is entitled to the entry of a declaratory judgment on Counts I and II of the Complaint, declaring that: (i) AIIC has no duty to defend the Firm in the Timeshare Litigation under the Renewal Policy, and (ii) AIIC has no duty to indemnify the Firm in the Timeshare Litigation under the Renewal Policy.[2]

---

[2] *See Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely Law Corp.*, 162 F. Supp. 3d 1068, 1078 (C.D. Cal. 2016) ("while the Underlying Actions have been brought by different plaintiffs, they all arise from a single course of conduct, a unified policy of making alleged affirmative misrepresentations to investors in order to induce them to invest in commercial real estate acquisitions"); *WFS Fin., Inc. v. Progressive Cas. Ins. Co., Inc.*, 232 Fed. App'x 624, 625 (9th Cir. 2007) ("Although the suits were filed by two different sets of plaintiffs in two different fora under two different legal theories, the common basis for those suits was the [insured's] business practice of permitting independent dealers to mark up [the insured's] loans. The harms alleged in the two class action suits are causally related and do not present such an 'attenuated or unusual' relationship that a reasonable insured would not have expected the claims to be treated as a single claim under the policy"); *XL Specialty Ins. Co. v. Perry*, No. CV 11-02078-RGK (JCGx), 2012 WL 3095331, at *8 (C.D. Cal. June 27, 2012) (concluding that the underlying actions filed by multiple plaintiffs to be related because the allegations of wrongdoing shared "common facts, circumstances, situations, events, or transactions" in regard to the reckless issuance of high-risk mortgages, stating that "[i]t is not necessary for the alleged wrongs to be temporally identical"); *Impress Commc'n Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 20-56203, 2021 WL 6101384, at *1 (9th Cir. Dec. 21, 2021) (holding that the insured's three separate printing errors relating to issues involving color variation, coating and overprint production defects, and foiling production defects constituted a single wrongful act subject to a single claim limit under the policy).

WHEREFORE, the Plaintiff, AIIC, respectfully requests that this Court enter a default declaratory judgment in its favor and: (i) declare that AIIC has no further obligation to defend the Firm under the Policy in the Timeshare Litigation; (ii) declare that AIIC has no obligation to indemnify the Firm under the Policy in the Timeshare Litigation; (iii) declare that AIIC has no obligation to defend the Firm under the Renewal Policy in the Timeshare Litigation; (iv) declare that AIIC has no obligation to indemnify the Firm under the Renewal Policy in the Timeshare Litigation; and (v) grant such other relief as the Court deems just, proper, and equitable.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for Plaintiff*
2 South Biscayne Boulevard,
Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: */s/ Daniel M. Hirschman*
JAMES M. KAPLAN
Florida Bar No.:921040
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
DANIEL HIRSCHMAN
Florida Bar No.: 44177
daniel.hirschman@kaplanzeena.com
maria.escobales@kaplanzeena.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of June, 2022, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF, and a true and correct copy was served via U.S. Mail to Defendants, Slattery, Sobel & DeCamp, LLP, Carlsbad Law Group, LLP, and JL "Sean" Slattery, at 5050 Avenida Encinas, Suite 300, Carlsbad, CA 92008, and Defendant, Del Mar Law Group, LLP, at 12460 Picrus Street, San Diego, CA 92129.

By: */s/ Daniel M. Hirschman*
      DANIEL M. HIRSCHMAN