**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ASSOCIATED         INDUSTRIES**
**INSURANCE COMPANY, INC.,**

**Plaintiff,**

**v.**                                      **Case No.   6:22-cv-80-PGB-DAB**

**SLATTERY, SOBEL & DECAMP,**
**LLP, DEL MAR LAW GROUP,**
**LLP, CARLSBAD LAW GROUP,**
**LLP, and J. L. SLATTERY,**

**Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came for consideration without oral argument on the following

motion:

| | |
|---|---|
| **MOTION:** | Plaintiff Associated Industries Insurance Company, Inc.'s Motion for Judgment by Default against Defendants Slattery, Sobel & DeCamp, LLP; Del Mar Law Group, LLP; Carlsbad Law Group, LLP; and J.L. Slattery (collectively, the Firm). (ECF 34) |
| **FILED:** | **June 7, 2022** |

**It is RECOMMENDED** that the motion be **GRANTED**.

# I.  BACKGROUND

Plaintiff issued a Professional Liability Insurance Policy to the Firm that ran for one year—from April 2019 to April 2020. (Initial Policy) (ECF 1 ¶ 3). When the Initial Policy ended, it was renewed for another year—from April 2020 to April 2021. (Renewed Policy and collectively, the Policies) (*Id.* ¶¶ 40, 52). During the Policy Periods, three timeshare developers sued the Firm. (Timeshare Litigation) (*Id.* ¶ 1). Plaintiff is currently defending the Firm against each claim under a reservation of rights. (*Id.* ¶ 53). According to Plaintiff, the Policies' limit of liability has been exhausted. (ECF 34 at 3). As a result, Plaintiff seeks a declaratory judgment that it has no further duty to defend or indemnify the Firm. (ECF 1).

## A. The Policy Language

The Renewed Policy and Initial Policy are materially identical. (*Id.* ¶ 52). Both obligate Plaintiff to defend the Firm against any covered "claim" and indemnify it for any damages or claim expenses that arise. (*Id.* ¶ 41). A "claim" is a written demand for monetary damages that alleges a "wrongful act." (*Id.* ¶ 42). A "wrongful act," in turn, is "any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render Professional Services." (*Id.* ¶ 48). The Policies define "interrelated wrongful acts" as wrongful acts that are "causally or logically related," including all wrongful acts that have a "common nexus" of "fact,

circumstance, situation, or event," or that are related or continuous. (*Id.* ¶ 46).

Both Policies limit the insurer's liability to $1 million per claim, with an additional $250,000 limit of liability if the $1 million threshold is reached. (*Id.* ¶ 52). Once the applicable limit of liability is exhausted, the Policies provide that the duty to defend terminates, and the insurer is not obligated to pay further damages or claim expenses. (*Id.* ¶ 41).

The Policies also delineate the limit of liability applicable to multiple, related claims ("Multiple Claims Provision"). (*Id.* ¶ 50). First, they provide that related claims must be treated as a "single claim":

> **Claims** alleging, based upon, arising out of or attributable to the same **Wrongful Act(s)** or **Interrelated Wrongful Acts** shall be treated as a single **Claim** regardless of whether made against one or more than one **Insured**.

(*Id.*). Then, they identify the limit of liability applicable to a "single claim":

> All such **Claims**, whenever made, shall be considered first made during the **Policy Period**, the Automatic Extended Reporting Period, or Optional Extended Reporting Period, if purchased, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.

(*Id.*).

## B. The Timeshare Litigation

This case relates to three lawsuits brought against the Firm by timeshare

developers.[1] (*Id.* ¶¶ 1, 16, 24, 33). Each lawsuit arises from the Firm's alleged participation in a "timeshare exit scheme." (*Id.* ¶¶ 19, 26, 35).[2] According to the developers, the Firm worked with a marketing group to lure timeshare owners into the scheme, then induced the owners to breach their timeshare contracts. (*Id.*).

### 1. Luring the timeshare owners into the scheme

The exit scheme starts with a marketing group, who lures in owners through a campaign of false and misleading advertising. (ECF 1–2 ¶¶ 111-53; ECF 1–3 ¶ 8; ECF 1–4 ¶¶ 1-7). The advertising campaign largely focuses on the Firm's role in the exit process, lending it a false sense of legitimacy. (ECF 1–2 ¶ 91; ECF 1–3 ¶¶ 9-10; ECF 1–4 ¶¶ 5, 12-13, 53). The Firm, in turn, uses the marketing group to skirt state bar restrictions on lawyer advertising. (ECF 1–2 ¶¶ 88-90; ECF 1–3 ¶ 116; ECF 1–4 ¶¶ 140-42).

---

[1] Those actions are: (1) *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP*, Case No. 6:19-cv-01908-WWB-EKJ, pending in the U.S. District Court, Middle District of Florida (the "Wyndham Action"); (2) *Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*, Case No. 2:20-cv-05486-DSF-ADS, pending in the U.S. District Court, Central District of California (the "Diamond Action"); and (3) *Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.*, Case No. 1:20-cv-24681-RNS, pending in the U.S. District Court, Southern District of Florida (the "Bluegreen Action").

[2] The facts recited regarding the Firm's role in the timeshare exit scheme are drawn from the timeshare developers' complaints in the Timeshare Litigation. These facts may well differ from those that can ultimately be proven.

Once an owner is lured into the scheme, the marketing group solicits a large upfront payment for "exit services." (ECF 1–2 ¶ 87; ECF 1–3 ¶ 12; ECF 1–4 ¶ 28). Upon payment, the marketing group refers the timeshare owner to the Firm—in exchange for a referral fee—to perform the "exit services." (ECF 1–2 ¶ 93; ECF 1–3 ¶ 17; ECF 1–4 ¶¶ 29–32). Based on the Firm's role in luring owners into the scheme, each developer separately sued the Firm for contributory violations of the Lanham Act. (ECF 1–2 ¶ 177; ECF 1–3 ¶ 357; ECF 1–4 ¶ 181).

### 2.  Inducing a breach of contract

Once the Firm accepts legal representation of a timeshare owner, it performs "exit services." To that end, the Firm severs communication between the owner and developer by sending a boilerplate demand letter that instructs the developer to direct all future communications to the Firm—not the owner. (ECF 1–2 ¶¶ 91, 241; ECF 1–3 ¶¶ 17, 19; ECF 1–4 ¶¶ 32–33). The Firm then withholds billing statements, late payment notices, default notices, and other correspondence that would alert an owner of a potential default. (ECF 1–2 ¶¶ 93, 105; ECF 1–3 ¶¶ 21–23; ECF 1–4 ¶ 36). With communications blocked, the Firm encourages and persuades the owner to stop making payments as a means of "exiting" the contract. (ECF 1–2 ¶ 93; ECF 1–3 ¶ 3; ECF 1–4 ¶ 36). The Firm does not disclose that this will result in an unlawful breach, leading to a non-judicial foreclosure of the owner's timeshare interest. (ECF 1–2 ¶ 94;

ECF 1–3 ¶¶ 26–28; ECF 1–4 ¶¶ 36–39). Instead, the Firm represents to the owner that it was "successful" in "cancelling" or "exiting" the contract. (ECF 1–2 ¶ 95; ECF 1–3 ¶ 3, 28; ECF 1–4 ¶ 55).

For its conduct, the developers lodge a number of overlapping claims against the Firm, including tortious interference with contractual relationships, unfair and deceptive trade practices in violation of state statute, and civil conspiracy. (ECF 1–2 ¶¶ 198, 223, 236; ECF 1–3 ¶¶ 370, 382, 416; ECF 1–4 ¶¶ 223, 250, 267).

### C. Plaintiff's request for a declaratory judgment

Plaintiff has defended the Firm against the Timeshare Litigation; however, Plaintiff alleges that on December 27, 2021, the Policies' limit of liability was exhausted. (ECF 34 at 3). As a result, Plaintiff seeks a declaratory judgment from this Court that it has no further duty to defend or indemnify the Firm. (ECF 1). The Firm failed to appear or defend against this lawsuit, so the Clerk entered default. (ECF 30, 31, 32, 33). Now, Plaintiff moves for a default judgment. (ECF 34).

## II.  DISCUSSION

### A. Subject Matter Jurisdiction

Before entering default judgment, a court must ensure it has subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

### 1.  Original jurisdiction

Default judgment is not warranted unless the plaintiff alleges facts showing that the controversy is within the court's original jurisdiction. Original jurisdiction exists by way of 28 U.S.C. § 1332—the diversity jurisdiction statute—when (1) there is complete diversity of citizenship, and (2) the amount in controversy exceeds $75,000. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016).

Complete diversity requires that no plaintiff be a citizen of the same state as a defendant. *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013). A corporation is a citizen of the state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c). A limited liability partnership (LLP) "is a citizen of each state in which any of its partners, limited or general, are citizens." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004). An individual is a citizen of the state where he or she is domiciled. *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002).

Here, Plaintiff is incorporated in Florida, and its principal place of business is in Florida, so Plaintiff is a Florida citizen. (ECF 1 ¶ 6). Plaintiff sues one individual, J.L. Slattery, and one law firm, Carlsbad Law Group, LLP.[3] (ECF 1 ¶ 7). Slattery is

---

[3] Defendant Carlsbad Law Group, LLP is the successor entity to a merger between Defendants

a California citizen because he is domiciled in the state of California. (*Id.* ¶ 9). Likewise, Carlsbad Law Group, LLP, is a California citizen because it has three partners, all domiciled in California. (*Id.* ¶¶ 8–11). Because Plaintiff is not a citizen of the same state as any Defendant, complete diversity exists.

Additionally, the amount in controversy exceeds $75,000. In a declaratory judgment action, the amount in controversy is the "value of the object of the litigation measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). When a party seeks a declaratory judgment regarding the duty to defend and indemnify, the amount in controversy includes the past and anticipated costs of the defense, along with the potential costs of indemnification. *See Stonewall Ins. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976).[4]

---

Slattery, Sobel & Decamp, LLP and Del Mar Law Group, LLP—both established under California law. (ECF 1 ¶ 7). In California, where an LLP undergoes merger, the merged entity ceases to exist, Cal. Corp. Code § 16914, and "cannot be subject to lawsuit." *Sanfilippo v. Tinder, Inc.*, No. 2:18-cv-08372-AB-JEM, 2018 WL 6681197, at *3 (C.D. Cal. Dec. 18, 2018). Thus, the two dissolved law firms Plaintiff names as Defendants no longer exist and are not relevant for purposes of diversity. *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 671–72 (9th Cir. 1986) (determining that under California law, a merged corporation no longer existed and was not relevant for purposes of diversity); *Sanfilippo*, 2018 WL 6681197, at *3 (considering only the citizenship of the successor entity because the dissolved entity "no longer exists after its merger"); *Kolker v. VNUS*, No. 4:10-cv-00900-SBA, 2010 WL 3059220, *3–4 (N.D. Cal. Aug. 2, 2010) (disregarding a dissolved corporate entity and only considering the citizenship of its successor); *see also Soura v. Buchalter, Nemer, Fields & Younger*, No. B179671, 2006 WL 1846615, at *9 n.8 (Cal. Ct. App. July 5, 2006) (stating that the laws governing partnerships and corporations are largely the same with respect to merger).

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the

Here, Plaintiff is defending the Firm in three actions—each heavily litigated.[5] Moreover the potential cost of indemnification could well exceed $75,000. (ECF 1-2 ¶ 248) (stating that plaintiff is seeking tens of millions of dollars in damages); (ECF 1-3 ¶ 40) (stating that the defendants' scheme has diverted millions of dollars). The Court finds that the amount in controversy exceeds $75,000.

## 2. Ripeness

Ripeness is a question of subject matter jurisdiction the Court must investigate before entering judgment. *Reahard v. Lee Cnty.*, 978 F.2d 1212, 1213 (11th Cir. 1992). Plaintiff seeks a declaration that it has no duty to defend or indemnify the Firm in the Timeshare Litigation. The duty to indemnify is separate and distinct from the duty to defend. *Imperium Ins. Co. v. Unigard Ins. Co.*, 16 F. Supp. 3d 1104, 1110 (E.D. Cal. 2014).[6] Before entering default judgment, the Court must ensure that both claims are ripe.

Two factors weigh on a claim's ripeness: (1) the fitness of the case for judicial decision, and (2) the hardship a plaintiff might suffer absent court redress. *Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006). A claim is fit for judicial decision if

_____

Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[5] There have been more than 1,700 filings across the Wyndham, Diamond, and Bluegreen Actions.

[6] California law is the substantive law applicable to this case. *See infra* at 14–15.

it presents a concrete controversy that can be immediately resolved. *James River Ins. Co. v. Cantrell*, No. 6:19-cv-1398-CEM-LRH, 2021 WL 1903737, at *2 (M.D. Fla. Mar. 31, 2021). By contrast, a claim is not fit for decision if it requires speculation about contingent future events. *In re Jacks*, 642 F.3d 1323, 1332–33 (11th Cir. 2011).

Here, Plaintiff's duty-to-defend claim is clearly ripe. The claim is fit for judicial decision because the duty arose upon the tender of defense, and the Court can immediately resolve the controversy by determining whether the allegations in the complaint possibly implicate coverage under the terms of the Policies. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 46, 939 P.2d 766, 773 (Cal. 1997). The duty to defend does not depend on the outcome of the Timeshare Litigation, so it presents a non-speculative, concrete controversy. *United Specialty Ins. Co. v. Tzadik Acquisitions, LLC*, No. 3:18-CV-1465-J-32JBT, 2019 WL 5110836, at *1 (M.D. Fla. Aug. 12, 2019). Moreover, Plaintiff will suffer hardship without a judicial decision because it will be forced to continue its defense of the Firm in the Timeshare Litigation. *Hartford Fire Ins. Co. v. Peninsula Logistics, Inc.*, No. 6:14-CV-00154-GAP, 2014 WL 1416339, at *2 (M.D. Fla. Apr. 11, 2014) (stating that an insurer is irreparably injured if required to defend a case without a contractual duty to do so). Thus, Plaintiff's duty-to-defend claim is ripe.

Plaintiff's duty-to-indemnify claim is also ripe. Unlike the duty to defend, a

duty-to-indemnify claim is not ripe until the underlying lawsuit is resolved. *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 769 (11th Cir. 2019). Indeed, the duty to indemnify arises only *after* liability is established, so it is contingent on a future event. *Buss*, 939 P.2d at 774; *Mid-Continent*, 766 F. App'x at 769; *Lee Mem'l Health Sys. v. Lexington Ins.*, No. 2:18-cv-617-SPC-NPM, 2019 WL 2471821, at *2 (M.D. Fla. Apr. 22, 2019).

However, there is an exception to the general rule: a court may assess an insurer's duty to indemnify before the underlying case is resolved if there are no circumstances where the allegations in the underlying complaint could trigger the duty. *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). This exception is largely limited to cases where two elements are present: (1) the court finds that the insurer has no duty to defend under the policy, and (2) under applicable state law, the duty to indemnify cannot exist absent a duty to defend. *See Safeco Ins. of Ill. v. Tremblay*, No. 2:16-cv-837-SPC-CM, 2018 WL 3648265, at *3 (M.D. Fla. Aug. 1, 2018); *Mt. Hawley Ins. Co. v. Mia. River Port Terminal, LLC*, 228 F. Supp. 3d 1313, 1326 (S.D. Fla.), *aff'd*, 713 F. App'x 951 (11th Cir. 2017); *David R. Farbstein, P.A. v. Wesport Ins.*, No. 0:16-cv-62361, 2017 WL 3425327, at *9 (S.D. Fla. Aug. 9, 2017); *Evanston Ins. v. Europa Bldg. Assocs.*, No. 18-cv-80174, 2019 WL 656216, at *4 (S.D. Fla. Jan. 15, 2019).

- 11 -

This case fits squarely within the exception. As explained below, Plaintiff has no further duty to defend the Firm in the Timeshare Litigation. *See infra* at 14–22. And in California—the applicable state law—"where there is no duty to defend, there *cannot* be a duty to indemnify." *Certain Underwriters at Lloyd's of London*, 24 Cal. 4th 945, 947, 961 (Cal. 2001) ("[B]ecause the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means that there is no duty to indemnify."). Consequently, there are no circumstances where the allegations in the Timeshare Litigation could trigger Plaintiff's duty to indemnify the Firm. For that reason, the Court is not precluded from assessing Plaintiff's duty-to-indemnify claim.

However, the Court notes that the District Court is not required to hear the duty-to-indemnify claim. *See Mid-Continent*, 766 F. App'x at 769 (stating that the *Northland* exception does not compel the court to assess the insurer's duty to indemnify before the underlying litigation concludes); *see also Allstate Prop. & Cas. Ins. v. Peluchette*, No. 15-cv-80325, 2015 WL 11438215, at *6 (S.D. Fla. July 30, 2015) (declining to follow *Northland*'s exception on prudential grounds). If the District Court declines to hear the claim, it should retain jurisdiction over Plaintiff's request for relief regarding the duty to defend—which is clearly ripe—and stay the request for relief on the duty to indemnify until the Timeshare Litigation is resolved.

*See Watermark Constr., L.P. v. S.-Owners Ins.*, No. 6:17-cv-1814-PGB-TS, 2018 WL 1305913, at *5 (M.D. Fla. Mar. 13, 2018).

### B. Service of Process

"Proper service of process is a jurisdictional prerequisite." *Fuqua v. Turner*, 996 F.3d 1140, 1154 (11th Cir. 2021). Thus, where service of process is insufficient, the Court has no power to render judgment. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003).

The Federal Rules of Civil Procedure permit a plaintiff to serve partnerships and individuals under any method allowed by the law of the state where service was made. Fed. R. Civ. P. 4(h)(1), 4(e)(1). Here, service was made in California. (ECF 23). Under California law, service on a partnership can be accomplished by delivering a copy of the summons and complaint to a person designated as the agent for service of process in a statement filed with the secretary of state. Cal. Civ. Proc. Code § 416.40(a). Service on an individual can be accomplished by delivering a copy of the summons and complaint to the person to be served. Cal. Civ. Proc. Code § 415.10.

The process server in this case delivered process to J.L. Slattery—an individual Defendant also designated as Defendant Carlsbad's agent in a statement filed with the secretary of state. (ECF 29 ¶¶ 7–8; ECF 23 at 2). As a result, Plaintiff perfected service under California law.

### C. Liability

Despite a defendant's default, a default judgment is not warranted unless the allegations in the complaint present a "sufficient basis" for a finding of liability. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A sufficient basis exists when the complaint's well-pled factual allegations state a plausible claim for relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). Threadbare recitals of the elements of a cause of action do not suffice, and a court is not required to accept as true legal conclusions. *Centennial Bank v. Vazquez*, No. 6:20-cv-2237-ACC-EJK, 2021 WL 2815223, at *2 (M.D. Fla. May 5, 2021) (stating that a defendant, by his default, admits the well-pleaded factual allegations in the complaint, but not the legal conclusions). However, a claim has facial plausibility when the facts pled allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007)).

### 1. California law governs the Policies

Before assessing whether a sufficient basis exists for liability, the Court must determine the applicable law. Because this is a diversity action, Florida's choice-of-law rules apply. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–78 (1938). In Florida, a contract is governed by the law of the state where it was executed. *Nyberg v. Cryo-*

*Cell Int'l, Inc.*, No. 8:11-cv-399-JSM-AEP, 2013 WL 5408447, at *2 (M.D. Fla. Sept. 25, 2013). Contract execution occurs when the last act necessary to complete the contract is performed. *Id.* Here, Plaintiff alleges that the Policies were issued in California, which were the last acts necessary to complete the contracts. (ECF 34 at 16). Thus, California law governs the Policies.

### 2.  Plaintiff has no further duty to defend or indemnify the Firm in the Timeshare Litigation

Under California law, ordinary rules of contract apply to insurance policies. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). The parties' mutual intent at the time of contract formation governs interpretation. *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990) When possible, the court infers this intent from the text. *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004). In analyzing the text, the court must give terms their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696, 705 (2007). If the text is ambiguous, the court construes it against the insurer to protect the insured's reasonable expectation of coverage. *Palmer*, 21 Cal. 4th at 1115. However, a provision is only ambiguous if it is susceptible to two or more reasonable constructions. *Id.*

Plaintiff argues that it has no further duty to defend or indemnify the Firm under

Case 6:22-cv-00080-PGB-DAB   Document 38   Filed 09/14/22   Page 16 of 25 PageID 614

the Policies. Plaintiff's argument stems from the Policies' text, and it rests on three premises: (1) the Timeshare Litigation constitutes a "single claim"; (2) the single claim is subject to a single limit of liability; and (3) the single limit of liability has been exhausted, relieving Plaintiff of its duties to defend and indemnify. The Court agrees with each premise.

### i.  The Timeshare Litigation constitutes a "single claim" under the Policies

The Policies obligate Plaintiff to defend the Firm against any civil suit alleging a "wrongful act." (ECF 1 ¶¶ 41–42, 48). In its Motion for Default Judgment, Plaintiff acknowledges that each civil suit underlying the Timeshare Litigation arises from a "wrongful act."[7] (ECF 34 at 20) ("Here, the claims asserted in the [Timeshare Litigation] are based upon and arise out of the same alleged Wrongful Act(s)."). So, each lawsuit underlying the Timeshare Litigation constitutes a "claim."

The question, then, is whether the three underlying suits constitute a "single claim." Multiple claims constitute a "single claim" when they allege, arise from, or are based upon the same "wrongful acts" or "interrelated wrongful acts." (ECF 1

---

[7] In its Complaint, Plaintiff alternatively alleges that the Timeshare Litigation did not allege a wrongful act because the lawsuits did not arise from actions taken while rendering "professional services." (ECF 1 ¶ 66). However, Plaintiff did not seek default judgment on this interpretation of the Policies, so the Court does not address it.

¶ 50). Interrelated wrongful acts are wrongful acts that are "causally or logically related," including those that have as a common nexus any fact, circumstance, situation, or event, and those that are the same, related, or continuous. (*Id.* ¶ 46).

A series of wrongful acts is "logically related" when they are connected by time, place, opportunity, pattern, and, most important, modus operandi. *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely L. Corp.*, 162 F. Supp. 3d 1068, 1079 (C.D. Cal. 2016), *aff'd*, 708 F. App'x 374 (9th Cir. 2017) (citation omitted) (applying California law). To that end, courts have found a series of actions interrelated when they involve the same wrongful conduct aimed at serving the same goal. *Id.*; *WFS Fin., Inc. v. Progressive Cas. Ins.*, 232 F. App'x 624, 625 (9th Cir. 2007).

Here, each claim arises from the same interrelated wrongful acts—namely, the Firm's participation in a "timeshare exit scheme." Each developer alleges that the Firm perpetuated the scheme by (1) contributing to the marketing group's false and misleading advertising; (2) representing the deceived timeshare owners; and (3) persuading the timeshare owners to breach their contracts. The Firm's misbehavior follows an identical pattern in each case—the Firm sent baseless demand letters that severed communication between owner and developer, then persuaded the owner to stop making payments. *Kilcher v. Cont'l Cas. Co.*, 747 F.3d 983, 989–90 (8th Cir. 2014) (holding that the dishonest acts were interrelated because the

defendant took advantage of the same opportunity and used the same modus operandi). Moreover, the Firm's actions were aimed at the same goal—obtaining a large upfront fee from timeshare owners. *Liberty Ins. Underwriters*, 162 F. Supp. 3d at 1079 (finding a series of claims logically related because they arose from a unified policy of making affirmative misrepresentations to investors for the purpose of obtaining investments); *Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1264 (11th Cir. 2000) (holding that separate lawsuits for legal malpractice and fraud in connection with the offering of securities gave rise to a single claim because the acts were aimed at a particular goal—encourage investment in the security). As a result, the Firm's wrongful acts were interrelated. And because those interrelated acts gave rise to each underlying lawsuit, the Timeshare Litigation constitutes a "single claim" under the Policies.

### ii. A "single claim" is subject to a single limit of liability

The Policies' Multiple Claims Provision delineates the amount of money available for a "single claim":

> All such **Claims**, whenever made, shall be considered first made during the **Policy Period** . . . in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.

(ECF 1 ¶ 50).

The plain text of this provision—"all such claims shall be subject to the Limit

of Liability and Retention set forth in such Policy"—subjects single claims to a single limit of liability. *See United States v. A.C. Strip*, 868 F.2d 181, 188 (6th Cir. 1989) (stating that the clear intent of the Multiple Claims Provision is to relate subsequent claims back to related initial claims so that the insurer is not liable for the policy limits on both claims). Beyond the text, Plaintiff states that the parties have treated the Timeshare Litigation as a single claim under the contract, and as a result, the Firm has only been required to pay a single $25,000 per-claim self-insured retention, rather than a $75,000 retention for all three claims. (ECF 37 at 5). Moreover, Plaintiff states that the Firm never disputed its interpretation of the Multiple Claims Provision, even while disputing its interpretation of other provisions. (*Id.* at 3–4). Thus, the text of the Multiple Claims Provision and the conduct of the parties indicate a mutual intent to subject single claims to a single limit of liability.

The Court's interpretation of the Multiple Claims Provision is consistent with the reasoning in *Attorneys Insurance Mutual Risk Retention Group, Inc. v. Liberty Surplus Insurance Corp.*, No. 2:15-cv-4756-FMO-JC, 2017 WL 6048221 (C.D. Cal. Mar. 28, 2017), *aff'd*, 761 F. App'x 756 (9th Cir. 2019).[8] There, a claim arose during the first policy period, which the plaintiff never reported. *Id.* at *3. A related claim

---

[8] On August 15, 2022, the Court ordered Plaintiff to file a supplemental brief discussing *Liberty Surplus*.

- 19 -

arose during the renewed policy period, which the plaintiff did report. *Id.* Citing a provision nearly identical to the one in this case, the insurer argued that the claims constituted a "single claim," which arose during the first policy period. *Id.* at *3–4, *6–7. Because the plaintiff failed to report the claim that arose during the first policy period, the insurer argued that no coverage existed. *Id.*

The court rejected the insurer's argument, holding that the Multiple Claims Provision does not exclude coverage by deeming a "single claim" to arise in a prior policy period. *Id.* at *7. Instead, the court held that an insurer has a duty to defend against claims made during the policy period, even if they relate to unreported claims that arose during a prior policy period.[9] *Id.* at *7–8.

*Liberty Surplus* does not conflict with this Court's interpretation of the Multiple Claims Provision. For one, *Liberty Surplus* addressed a different issue. There, the issue was whether the Multiple Claims Provision excluded coverage—thereby eliminating the insured's duty to defend. *Id.* at *8. Here, however, Plaintiff does not contend that the Provision excludes coverage for the Timeshare Litigation; indeed, it

---

[9] The court's holding turned on the bolded phrase "Policy Period"—a term defined by the Policy to mean "the period from the Inception date of this Policy to the Policy Expiration Date." *Liberty Surplus*, 2017 WL 6048221, at *7. In accordance with the definition, the court interpreted the Multiple Claims provision to mean "all Claims, whenever made, shall be considered first made during the [time period of <u>this</u> Policy]." *Id.* at *8. Thus, the court held that the "single claim" was considered first made in the renewed policy period, not the initial policy period. *Id.* at *7–8. And because the insured gave notice during the renewed period, coverage existed.

acknowledges that it had a duty to defend the Firm. (ECF 37 at 4). Instead, Plaintiff argues that the Multiple Claims Provision limits the amount of money available for the Firm's covered claim.

The *Liberty Surplus* court suggested that the Multiple Claims Provision does, in fact, limit the amount of money available for single claims. Indeed, the insured in *Liberty Surplus* (whose argument the court ultimately adopted) recognized that while the Multiple Claims Provision does not exclude coverage, it does "describe the amount of money available for any given Claim or series of Claims." *See* Supplemental Memorandum of Points and Authorities at 8, *Liberty Surplus*, No. 2:15-cv-4756-FMO-JC (June 30, 2016) (Doc. 30). The insured continued, stating that the Multiple Claims Provision is intended to subject multiple covered claims to a "single per Claim Limit of Liability . . . rather than multiple or aggregate limits." *Id.* The district court appeared to agree with the insured, citing its argument and stating that the Multiple Claims Provision "describes the amount of money available for any Claim or related Claims." *Liberty Surplus*, 2017 WL 6048221, at *8. Accordingly, *Liberty Surplus* recognized—as does this Court—that the Multiple Claims Provision intends to limit the amount of money available for related claims by subjecting them to a single limit of liability.

### iii. The limit of liability has been exhausted, relieving Plaintiff of its duty to defend and indemnify

Having found that the Timeshare Litigation is subject to a single limit of liability, the Court must determine whether the limit has been exhausted and whether exhaustion relieves Plaintiff of its duties.

The limit of liability in the Policy is $1 million per claim, with an additional $250,000 for claim expenses if the $1 million limit is exhausted. (ECF ¶ 52). Plaintiff's claim representative attests that on December 27, 2021, the limit of liability was exhausted through the payment of claim expenses. (ECF 1 ¶ 52; ECF 34-1 ¶ 6). Because this factual allegation is deemed admitted by virtue of the Firm's default, Plaintiff has established that the limit of liability was exhausted.

Moreover, exhaustion terminates Plaintiff's duty to defend and indemnify the Firm. *Hartford Accident & Indem. Co. v. Superior Ct.*, 23 Cal. App. 4th 1774, 1781, (1994); *Great Am. Ins. v. Superior Ct.*, 178 Cal. App. 4th 221, 234 (2009). That result is dictated not just by the case law, but also the language of the Policies. (ECF 1 ¶ 41) ("[T]he duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of Damages and/or Claim Expenses."); (*id.*) (stating that the duty to indemnify is "subject to the Policy's Limit of Liability"). Because the limit of liability has been exhausted, the Court recommends granting Plaintiff's Motion for Default Judgment.

## CONCLUSION

Plaintiff has no further duty to defend or indemnify the Firm in the Timeshare Litigation under the Initial or Renewed Policy. The Timeshare Litigation constitutes a "single claim" under the Policies, and "single claims" are subject to a single limit of liability. Because that single limit of liability has been exhausted, Plaintiff has no further duty to defend or indemnify the Firm.

## REPORT AND RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED that:

a. Plaintiff Associated Industries Insurance Company, Inc.'s Motion for Judgment by Default (ECF 34) be **GRANTED.**

b. The Clerk of Court be **DIRECTED** to enter default judgment in favor of Plaintiff.

c. Declaratory Judgment be entered that makes the following declaratory findings:

   i. Plaintiff has no further duty or obligation to defend the Firm in the Timeshare Litigation under the Initial Policy.

   ii. Plaintiff has no obligation to defend the Firm in the Timeshare Litigation under the Renewed Policy.

   iii. Plaintiff has no obligation to indemnify the Firm in the Timeshare Litigation under the Initial Policy or Renewed Policy.

  d. Alternatively, the Motion should be:

   i. **GRANTED** to the extent that Plaintiff seeks a declaratory judgment that it has no duty to defend the Firm under the Initial Policy or Renewed Policy, and

   ii. **DENIED** to the extent that it seeks a declaratory judgment that it has no duty to indemnify the Firm under either Policy. The duty-to-indemnify claim should be stayed pending a final resolution of the Timeshare Litigation.

**RECOMMENDED** on September 14, 2022.

_____

**CELESTE F. BREMER**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO PARTIES</u>

  A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to

file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Copies furnished to:

Presiding District Judge
Counsel of Record